W. H. HARRIS & COMPANY, Respondents, v. FOWLER & McVITTIE, Appellants.

Kansas City Court of Appeals, February 1, 1897, and May 31, 1897.

1. Pleadings: ANSWER: ISSUES: INSTRUCTION. *Held,* the answer in this case tendered an issue whether the owners of a steamer having a charter contract with plaintiff made through the defendants demanded of the defendants a certain sum for dead freight; and, if so, whether the defendants notified the plaintiffs thereof and whether plaintiffs requested defendants to pay said demand and whether defendants did so; and an instruction submitting such issues to the jury was proper, and it is immaterial whether the ton of the contract was a long or a short ton or what was the customary ton at Galveston or Kansas City.

2. ———: ISSUES: INSTRUCTION: HARMLESS ERROR. Though an instruction required the prevailing party to establish facts not within the issues, such defect will not vitiate a verdict in his favor.

3. Trial Practice: EVIDENCE: DEMURRER: VERDICT. There was evidence warranting submission of this case to the jury.

4. ———: VERDICT: INTEREST. The verdict in this case is not excessive since the alleged excess represents interest which was lawfully allowed.

*Appeal from the Jackson Circuit Court.*—HON. E. L. SCARRITT, Judge.

AFFIRMED.

*Henry M. Withers* and *James G. Smart* for appellants..

(1) The court erred in refusing to give instruction number 8 for the defendants. It is as follows: "The court instructs the jury that it was the duty of plaintiffs under their contract of shipment as shown by the evidence, to deliver to steamship, 'Tangier,' two thousand, four hundred and fifty tons of corn, consisting of

two thousand, two hundred and forty pounds each, and the fact that plaintiffs knew or did not know that such ton consisted of two thousand, two hundred.and forty pounds is immaterial." This contract is to be interpreted by the marine law or general commercial usage of the sea. In *Prentiss v. S. Co.*, 58 Fed. Rep. 704, the court says, "Charters of vessels have long been held to be marine contracts." *Pritchard v. Norton*, 106 U. S. 136, 137; *Watts v. Camors*, 115 U. S. 359. (2) Courts take judicial notice of "the legal weights and measures." 1 Greenleaf on Ev. [15 Ed.], sec. 5. Also of the laws of congress. *Wood v. Nortman*, 85 Mo. 298; Lawson on Usages and Customs, sec. 18, p. 44; *Samuel v. Oliver*, 130 Ill. 73; 3 Sutherland on Damages, p. 15; Blackburn on Contracts of Sale [2 Eng. Ed.], p. 59. (3) The giving of instruction number 1 was error, to which defendants duly excepted. If defendants are right in contending that the word ton when used with reference to a cargo means two thousand, two hundred and forty pounds by a fixed and general custom, plaintiffs are bound to know it and it was error to instruct that they were not bound unless they "knew or were notified * * * or knew of a custom general or special, that by the use of the word ton in the said contract was meant a ton of two thousand, two hundred and forty pounds." *Steamboat Co. v. Fessenden*, 79 M. E. 140–149; *Younger v. Judah*, 111 Mo. 312; *Long Bros. v. Armsby Co.*, 43 Mo. App. 266; *Walsh v. Miss. Tr. Co.*, 52 Mo. 438. (4) Even though the custom making a sea ton two thousand, two hundred and forty pounds should be considered a special, instead of a general, one (an absurd proposition), yet, if the two contracting parties belonged to the same class of persons, plaintiffs were bound to know this special custom and the court should not have assumed, as it did in this instruction, that the contracting parties were not of the

same class.  *Gaunt-Maupin & Co. v. Pries & Co.*, 21
Mo. App. 542; *Evans v. Mfg. Co.*, 118 Mo. 548, 554;
*Long Bros. v. Armsby Co.*, 43 Mo. App. 266; *Star Class
Co. v. Morey*, 108 Mass. 575. (5) The instructions,
we submit, are manifestly contradictory and inconsist-
ent; and even though the law be correctly stated in
the one given for defendants, it can not cure the vice of
the other; for they are calculated to mislead and con-
fuse the jury. This is reversible error. *Legg v. John-
son*, 23 Mo. App. 590; *Evans v. Shumaker*, 57 Mo.
App. 455, 458; *Frank v. R'y*, 57 Mo. 181, 186; *Gregory
v. Sitlington*, 54 Mo. App. 60, 64; *State v. Brumley*,
53 Mo. App. 126, 131; *State v. Cable*, 117 Mo. 380,
386; *Spillane v. R'y*, 111 Mo. 555, 564. (6) The ver-
dict had no substantial evidence to support it and the
trial court for this reason should have set it aside. "A
judgment on such a verdict must be reversed." *Long
v. Moon*, 107 Mo. 334, 338, 339; *Garrett v. Greenwell*,
92 Mo. 120, 125; *Spohn v. Railway*, 87 Mo. 84; Fink-
elnburg's Appellate Practice, pp. 110, 111, 112; *Kreis
v. R'y*, 131 Mo. 533.

*I. J. Ringolsky* and *Wm. C. Forsee* for respondents.

(1) In Missouri a ton is two thousand pounds. R.
S. 1889, sec. 8857. (2) In the absence of proof as to
the statutory ton of Texas, the law of the forum gov-
erns, and our courts will apply our statute. The "ton,"
therefore, in this case, is two thousand pounds. *Flato
v. Mulhall*, 72 Mo. 522; *White v. Chaney*, 20 Mo. App.
389; *Silver v. R'y*, 21 Mo. App. 5; *Crane v. Dawson*,
19 Mo. App. 214; *Selking v. Hebel*, 1 Mo. App. 340.
(3) If the meaning of the word "ton" is to be deter-
mined without reference to the statute, or if it comes at
all in question here, it was at most a jury question—a
mere matter of technical interpretation. *Gaunt v.*

Harris & Co. v. Fowler & McVittie.

*Pries*, 21 Mo. App. 543; *Whitmore v. Coates,* 14 Mo. 9; *Blair v. Carby,* 37 Mo. 313. (4) If the word is claimed to have a trade meaning, the meaning claimed must be shown to be certain, uniform, well established, and notorious. *S. W. Frt. Co. v. Stanard,* 44 Mo. 71; *Martin v. Hall,* 26 Mo. 386; *Ober v. Carson,* 62 Mo. 209. (5) One is not bound by a class custom of which he knew nothing at the date of the contract. *Brown v. Strimple,* 21 Mo. App. 338. (6) The motion for a new trial did not claim that the verdict was excessive; hence the objection can not be urged here. R. S. 1889, secs. 2085, 2302; *Sweet v. Maupin,* 65 Mo. 68, 72; *Alexander v. Reef,* 74 Mo. 495, 520; *Joyce v. Murnaghan,* 17 Mo. App. 11; *Gfeller v. Graefemann,* 64 Mo. App. 163, 164. (7) Respondents' fourth instruction was properly given. *Henry v. R'y,* 109 Mo. 495; *State v. Buchler,* 103 Mo. 209. (8) All the instructions taken together fairly presented the case. This is enough. *Karle v. R'y,* 55 Mo. 476.

SMITH, P. J.—This is an action by the plaintiffs against the defendants to recover a certain amount of money alleged to have been paid by the former to the latter under protest and involuntarily. There was a trial in the circuit court resulting in judgment for plaintiffs and from which defendants have appealed. The errors of which defendants mainly complain arise out of the action of the circuit court in the giving and refusing of instructions. The propriety of the action of the court in this regard must be determined by reference to the issues made by the pleading.

The petition alleges that the defendants entered into a contract with the plaintiffs whereby the former

PLEADINGS.

agreed to carry for the latter from Galveston, Texas, to Vera Cruz, Mexico, by steamer "Tangier" a complete cargo of corn, equal to

the full capacity of said steamer. It is further alleged that plaintiffs, according to said contract, did load said steamer with a cargo of corn almost equal to its full carrying capacity, and the fact that it was not so loaded was no fault of the plaintiffs, etc. It is further alleged that defendants drew a sight draft on plaintiffs for dead freight demanded by them on account of said shipment and claiming a lien therefor on said cargo, accompanying said draft with a threat that they would hold possession of the bill of lading attached to said draft and not deliver said cargo at Vera Cruz, unless said draft was paid by a certain date. It is further alleged that plaintiffs, to get possession of said bill of lading, paid the draft but did so under protest and involuntarily, etc. It was further alleged that the said draft was without consideration and fraudulent, and that the plaintiffs at the time of the payment thereof were not indebted to defendants on any account whatever.

The answer of the defendants was a general denial, coupled with allegations of certain special matter in defense which were in substance that the defendants in their capacity of brokers, at the special instance and request of the plaintiffs, chartered the English steamer "Tangier" to receive and carry a complete cargo of corn from Galveston, Texas, to Vera Cruz, Mexico; that by the terms of said charter the plaintiffs bound themselves to deliver alongside of said steamer two thousand, four hundred and fifty tons of corn, for the carriage of which they were to pay seventeen cents per hundred pounds; that plaintiffs only delivered two thousand, two hundred and twenty-four tons, and refused to deliver any more. It is further therein alleged that the owners of said steamer, learning that the plaintiffs had refused to complete the cargo, according to their charter obligations, or by two hundred and twenty-six tons, demanded $555.50 as "dead freight," or the dif-

ference between the quantity of freight plaintiffs had bound themselves to deliver and that actually delivered at said rate of seventeen cents per hundred pounds; that defendants informed plaintiffs of the said demand at the time the same was made by the owners of said steamer and that thereupon at the request of plaintiffs and upon their express promises that they would reimburse defendants, the latter advanced said sum of $555.50 to the owners of said steamer, and thereby obtained for the former a clear bill of lading for said cargo.

The allegations of the petition and the denial of the answer present substantially this issue, namely:

*First.* Whether or not the plaintiffs owed the defendants the said sum of $555.50, for which said draft was drawn, and, if not, did the plaintiffs under protest and involuntarily pay said draft in order to obtain the bill of lading for the cargo of corn received on board of the said steamer for shipment; and, *second,* whether the plaintiffs by the terms of the charter entered into with the defendants representing said steamer were bound to furnish said steamer a cargo of corn for shipment equal to the full carrying capacity of said steamer, and, if so, whether the plaintiffs did so furnish such cargo at the time and place required by the terms of said charter, or, if not, was it their fault? The first of these issues was sufficiently covered and submitted to the jury by the plaintiffs' third and fifth instructions. And the second was fairly submitted by the plaintiffs' second instruction.

The issue tendered by the answer was whether the owners of the steamer demanded of the defendants the said sum of $555.50, as dead freight on PLEADINGS: answer: issues: said cargo, and, if so, whether the defend-instruction. ants notified the plaintiffs of said demand, and whether the plaintiffs thereupon requested the de-

fendants to pay said demand, and whether defendants did accordingly pay it. The answer tendered no other issue. The allegations in respect to the charter, the quantity of freight it obliged plaintiffs to furnish, the quantity they did furnish, the difference between the former and the latter of these quantities, etc., are no more than mere matters of inducement. These facts are not comprehended within the group of issuable facts alleged in the answer. The right of the defendants to reimbursement depends upon the establishment of the affirmative of the issue tendered by the answer, and not upon that of the facts stated in the answer by way of inducement.

The plaintiffs may or may not have furnished to said steamer a complete cargo of two thousand, four hundred and fifty tons of corn, consisting of two thousand, two hundred and forty pounds each, or there may or may not have been a difference of two hundred and twenty-six tons between the numbers of tons called for by the charter and the number delivered; or, it may or may not have been that the owners of said steamer were entitled to freight on said two hundred and twenty-six tons deficiency as so much "dead freight," yet, in either case, if the owners of said steamer made a demand on the defendants for the amount of "dead freight" nominated in the draft, and the plaintiffs, on being notified by the defendants of such demand, requested the defendants to pay the same, and they did so pay it, then it is clear that the defendants were legally entitled to reimbursement for the amount so advanced. The allegations of the answer to the effect that the plaintiffs did not furnish a complete cargo, is not a fact constitutive or essential of the defense pleaded.

Turning again to the instructions and we find that under the defendants' first and second instructions the

court very clearly and fully submitted the issue tendered by the answer to the determination of the jury. The instructions, in substance, told the jury that if the owners of the steamer demanded of the defendants $555.50 as dead freight, and defendants, at the special instance and request of W. H. Harris, one of the plaintiffs, in good faith advanced this amount of said dead freight to the owners of said steamer, that then the plaintiffs were not entitled to recover back such sum. These instructions very properly confined the attention of the jury to the issue which the defendants raised by their answer.

The defendants, however, object that the court committed a grievous error against them by declining to instruct the jury at their request, to the effect that under the charter shown in evidence it was the duty of the plaintiffs to deliver to the said steamer two thousand, four hundred and fifty tons of corn, consisting of two thousand, two hundred and forty pounds each, and the fact that plaintiffs knew or did not know that such ton consisted of two thousand, two hundred and forty pounds was immaterial. Whether this duty was enjoined upon the plaintiffs by the charter in question is not a material inquiry.

The defense is not that the plaintiffs did not perform the conditions of the charter, but that the plaintiffs failed to comply with their promise to pay defendants the said amount of dead freight advanced by the latter at the request of the former. The question suggested by the instruction, though one of law, and for the court to decide, was but an abstraction, having no pertinency to the decisive issues in the case.

The defendants further object that the first instruction given by the court for the plaintiffs is erroneous in expression. It declared, amongst other things, that if

<div style="margin-left:margin"><em>——: issues: in-<br>struction; harm-<br>less error.</em></div>

it was the general custom among merchants, brokers, and others at Kansas City to use two thousand pounds for a ton, and that the general custom in Galveston was to use two thousand, two hundred and forty pounds for a ton, that plaintiffs could not be bound by the custom prevailing at the latter place, and did not contract to deliver two thousand, four hundred and fifty tons of corn of two thousand, two hundred and forty pounds each, unless they knew at the time that by the word "ton" was meant two thousand, two hundred and forty pounds. The remainder of this instruction substantially harmonizes in its enunciation with the defendants' first and second instructions already noticed. There was no question of local or general custom as to what number of pounds constituted a ton at either of the cities just named. Whether by the custom of the former of these places two thousand pounds was a ton, or whether by the custom at the latter two thousand, two hundred and forty pounds was a ton, or, whether the usage at the two places was different, and if so, whether the plaintiffs had or had not knowledge of the fact when they contracted for the said shipment were questions of fact not within the limits of the issues made by the pleadings. The rights of neither of the parties to this controversy can be determined the one way or the other by the existence or nonexistence of the facts embraced in the hypotheses of that part of the plaintiffs' instruction just referred to. While this instruction required the jury to pass upon one or more questions of fact that were irrelevant and outside of the limits of the decisive issues, yet as the case was fairly submitted by other instructions, we can not see that any prejudice resulted to the defendants therefrom. The verdict under the pleadings and evidence was manifestly for the right party. The statute, section 2303,

imperatively commands us not to reverse a judgment on account of the commission of an error in the trial of a cause unless we believe the error so committed materially affects the result of the action.    There is no substantial conflict between the plaintiffs' second instruction and the defendants' second, and especially so in view of what has been already said in respect to the plaintiffs' first instruction.

The defendants further object that there was no sufficient evidence adduced to justify the giving of the plaintiffs' said second instruction.    This objection we can not sustain.    Without repeating the evidence here we may state that an examination of the record has convinced us that it is ample to warrant the action of the court.

TRIAL practice: evidence: demurrer: verdict.

The defendants further contend that the plaintiffs, if entitled to recover at all, could only recover $555.50, the amount of the item of dead freight, and that, therefore, the amount of the verdict, which was $629.46, was excessive.    We can not yield our assent to this for the reason that the difference between these two amounts no doubt represents interest which the jury, under the petition, were authorized to allow.

——: verdict: interest.

The case has been already twice tried, and the record thereof, covering several hundred pages, shows that every conceivable phase of it has been presented to the court by able and industrious counsel, so that we do not think it would subserve any useful purpose to reverse the judgment and remand the cause, and thus afford the parties so desiring it an opportunity to again contest the same old grounds, therefore, the judgment will be affirmed.    All concur.